# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2370 | **DATE** | 4/19/2002 |
| **CASE TITLE** | NATIVE AMERICAN ARTS vs. EARTHDWELLER, LTD., et al. | | |

| MOTION: | [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.] |
|---|---|
| | |

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] The Waldron Corporation's motion for summary judgment [72-1] is denied. The joint final pre-trial order and agreed jury instructions shall be presented on May 9, 2002 at 9:00 a.m. Plaintiff's draft shall be submitted to defendants by May 2, 2002. Trial is set on June 10, 2002 at 9:00 a.m. ENTER MEMORANDUM OPINION AND ORDER.

*/s/ Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | APR 22 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | | |
| | Copy to judge/magistrate judge. | | 4/19/2002 | |
| | | 02 APR 19 PM 4:27 | date mailed notice | |
| cb | courtroom deputy's initials | | bb | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| NATIVE AMERICAN ARTS, INC. | ) |
| Plaintiff, | ) No. 01 C 2370 |
| v. | ) Suzanne B. Conlon, Judge |
| EARTHDWELLER, LTD., and THE WALDRON CORPORATION | ) |
| Defendants. | ) |

### MEMORANDUM OPINION AND ORDER

Native American Arts, Inc. ("NAA") sues Earthdweller, Ltd., and The Waldron Corporation ("Waldron") for violations of the Indian Arts and Crafts Act of 1990 ("the IACA"), 25 U.S.C. § 305e (Counts I, III, V, VII), and for punitive damages under the IACA pursuant to 25 U.S.C. § 305e(b) (Counts II, IV, VI, VIII). The claims arise from Waldron's alleged fraudulent offer, display, and sale of goods as Indian-produced. Waldron moves for summary judgment.

### BACKGROUND

All facts are undisputed unless otherwise noted. NAA is a wholly Indian-owned arts and crafts organization involved in distribution of authentic Indian arts and crafts. Waldron is located in Rapid City, South Dakota, and wholesales, manufactures, and supplies Indian art, craft, and jewelry products in traditional Indian style, motif, and design.

Matthew Mullen is NAA's president. Mullen first discovered Waldron's products in December 1996. From 1997 to 2001, Mullen purchased Waldron products at various sales outlets

1



in Chicago and its suburbs. Mullen videotaped six visits to various stores that sold Waldron products from 1999 to 2001. On January 5, 1997, a Buckboard Co. store agent informed Mullen during a store visit that Waldron's products were authentic Indian-made goods. On November 26, 1999, Daniel Mullen, at Matthew Mullen's behest, investigated Waldron products sold at a Bundy Howard, Inc./Bear Tracks store. The store clerk suggested Waldron's products were authentic Indian-made goods. On January 1, 2000, Daniel Mullen asked a Bear Tracks store clerk if Waldron's products were Indian-made, and the store clerk stated they were authentic Indian goods. An identical scenario occurred on January 4, 2000. On March 6, 2001, Matthew Mullen was informed by Lisa Dorsey, Waldron's sales manager, that Waldron's products were not Indian-made.

## DISCUSSION

### I. Summary judgment standard

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Res. Comm.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-movant must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *Bay v. Cassens Transp., Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

2

## II. Statute of Limitations

Waldron asserts NAA's action is barred by the statute of limitations. The IACA does not contain an express statute of limitations. *See* 25 U.S.C. § 305e. Waldron advocates the use of a three-year statute of limitations in the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1-505/12 (2001). In response, NAA contends the federal catch-all statute of limitations governs, 28 U.S.C § 1658, and a four-year limitations period applies. In the alternative, NAA advances a five-year statute of limitations that governs injury to personal property. 735 ILCS § 5/132-05.

Courts generally borrow the limitations period for the most analogous state statute of limitations for federal laws enacted before December 1, 1990. *DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 164-65 (1983). After December 1, 1990, Congress imposed a four-year statute of limitations on any cause of action without a specific limitations period. *See* 28 U.S.C. § 1658. The IACA was enacted on November 29, 1990. In *NAA v. Chrysalis Institute, Inc.*, No. 01 C 5714, 2002 WL 441476, at *2 (N.D. Ill. Mar. 21, 2002), the court held the federal catch-all limitations period was inapplicable because the IACA was enacted before § 1658. The court determined the most closely applicable statute of limitations is the three-year limitations period in the Illinois Consumer Fraud Act, 815 ILCS § 505/1 *et seq.* The Illinois Consumer Fraud Act applies to unlawful methods of competition, including deception, fraud, false pretenses, and misrepresentation. The court stated the IACA addresses a subcategory of consumer fraud: "the claim that a product is Indian-made when in fact it is not." *Id.* at *3.

*Chrysalis* is instructive. The IACA bans false and misleading statements regarding the authenticity of Indian arts and crafts. It protects "Indian sellers or arts and crafts by preventing non-

3

Indians from exploiting the market value and goodwill associated with authentic, Indian-made products; this also benefits consumers who prefer authentic goods and are willing to pay for them." *Flordine v. State Farm Ins. Co.*, No. 99 C 7466, 2001 WL 204786, at *6 (N.D. Ill. Mar. 1, 2001). The IACA and the Illinois Consumer Fraud Act "protect the interests of both consumers who have been deceived and purveyors whose legitimate products are injured by the deception of the consumer." *Chrysalis*, 2002 WL 441476, at *3.

The plain language of § 1658 applies the four-year limitations period to statutes enacted after December 1, 1990 only. *See* 28 U.S.C. § 1658. The use of the five-year limitations period that governs actions for injury to personal property is inapplicable. *See* 735 ILCS § 5/13-205. A statute regulating injury to personal property is not analogous to the IACA because that statute does not address fraudulent and deceptive conduct, which is the thrust of the IACA's mission. *Chrysalis*, 2002 WL 441476, at *3. The IACA regulates the means of promoting a non-Indian made product, and prevents individuals from fraudulently offering their goods as Indian-produced. The most analogous state statute is the Illinois Consumer Fraud Act. *Id.* Consequently, actions under the IACA are subject to a three-year statute of limitations.

For the purposes of statute of limitations, a cause of action accrues when "a reasonable person knows, or in the exercise of reasonable diligence should have known of both the injury and the governing cause." *Fries v. Chicago & Northwestern Transp. Co.*, 909 F.2d 1092, 1095 (7th Cir. 1990). A plaintiff must have sufficient information about his injury and its cause to put a reasonable person on inquiry; this determination is a question of fact. *Lilly v. Ford Motor Co.*, No, 00 C 7372, 2002 WL 84603, at *9 (N.D. Ill. Jan. 22, 2002).

NAA contends that since April 1996, Waldron has displayed or offered for sale goods that falsely suggest they were Indian-made. Waldron asserts NAA reasonably knew of the alleged violation before December 13, 1996. According to Waldron, NAA's statute of limitations expired on December 13, 1999. The IACA allows the recovery of treble damages, or "not less than $1000 for each day on which the offer or display for sale or sale continues." 25 U.S.C. § 305e. NAA argues it did not have reasonable knowledge of Waldron's purported IACA violations until March 2001. NAA's complaint was filed on April 5, 2001. In the alternative, NAA argues the continuing violation doctrine allows it to reach back and bring an action for pre-1999 conduct. The continuing violation doctrine is not available if the plaintiff "knows or with the exercise of reasonable diligence would have known after each act that it was [a violation] and had harmed him." *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 282 (7th Cir. 1993); *Honorable v. The Easy Life Estate Sys.*, 182 F.R.D. 553, 564 (N.D. Ill. 1998). Thus, the crux of the statute of limitations issue concerns when NAA knew or should have known about the alleged IACA violations.

Waldron asserts Matthew Mullen testified at his deposition he knew Waldron's products were violating the IACA on December 13, 1996. Def. 56.1 Facts at ¶ 25. Further, Waldron contends Matthew Mullen engaged in on-going investigations from 1997 to 2000, including video surveillance of various stores that sold Waldron products in 1999 and 2000. Def. 56.1 Facts at ¶ 30. According to Waldron, Matthew Mullen's investigations demonstrate he reasonably knew a purported IACA violation had occurred, and he was collecting evidence for a potential lawsuit. Waldron characterizes Matthew Mullen as an expert in Indian-made products, and contends he should have known Waldron's products were not Indian-made. *Id.* at ¶ 21.

5

In response, NAA contends Matthew Mullen did not become aware of the IACA violation until March 2001, when Lisa Dorsey, Waldron's representative, told him that Waldron products were not Indian-made. Pl. 56.1 Facts at ¶ 35. Waldron asserts NAA mischaracterizes Matthew Mullen's deposition testimony about his knowledge of IACA violations in 1996. Mullen testified he was involved in an on-going investigation from 1996 to determine whether Waldron's products were Indian-made. Def. 56.1 Facts, Ex. G. at 164. And Mullen stated he believed various Waldron products purchased in December 1996 were Indian-made. *Id.* at 168. On January 5, 1997, a Buckboard Co. store agent informed Matthew Mullen during a store visit that Waldron's products were authentic Indian-made goods. *Id.* at 307. On November 26, 1999, Daniel Mullen investigated Waldron products sold at a Bundy Howard, Inc./Bear Tracks store. Pl. 56.1 Facts at ¶ 22. The store clerk suggested Waldron's products were authentic Indian-made goods. *Id.* at ¶ 23. On January 1, 2000, Daniel Mullen asked a Bear Tracks store clerk if Waldron's products were Indian-made, and the store clerk stated they were authentic Indian products. *Id.* at ¶ 25. An identical scenario occurred on January 4, 2000. *Id.* at ¶ 27.

Viewing the evidence in the light most favorable to NAA, NAA raises a genuine dispute of material fact about when NAA knew or with the exercise of reasonable diligence should have known of the alleged IACA violations. The IACA bans the display and sale of products that falsely suggest they were produced by Indians. The repeated assurances of various sales representatives that Waldron's products were Indian-made raises a genuine dispute about when a reasonable person would have knowledge of an IACA violation. Waldron fails to advance evidence Matthew Mullen could differentiate between authentic and non-authentic Indian-made products by merely observing the product. Matthew Mullen's deposition testimony is inconclusive on whether he reasonably knew

6

of an alleged IACA violation in December 1996. "Whether a plaintiff had sufficient information to place it on inquiry notice is a question of fact." *Marks v. CDW Computer Ctrs., Inc.*, 122 F.3d 363, 367 (7th Cir. 1997). NAA advances evidence Matthew Mullen had actual knowledge Waldron's products were not Indian-made in March 2001, when Dorsey informed Mullen the products were not authentic Indian goods. Waldron fails to proffer evidence demonstrating Mullen had actual knowledge of the purported violations before December 1999.

Additionally, NAA claims its statute of limitations began when Congress granted Indian arts and crafts organizations standing to sue on November 9, 2000. NAA fails to cite any authority for this proposition. Moreover, NAA's argument is without merit. The IACA was enacted in December 1990, and the IACA regulated Waldron's purported conduct in 1996 when NAA first encountered Waldron's products. A statute of limitations begins to accrue when a party knew or should have known of the alleged injuries. *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1464 (7th Cir. 1992). Because NAA raises a genuine dispute of fact, summary judgment must be denied on statute of limitations grounds. *See Kedzierski v. Kedzierski*, 899 F.2d 681, 683 (7th Cir. 1990) (when parties dispute facts concerning when a reasonable person would know of an alleged injury, summary judgment must be denied).

### III. Doctrine of Laches

Waldron contends NAA's action is barred by the doctrine of laches because it waited five year to file its complaint. Laches is an equitable defense that prevents parties from "sleeping on their rights", and subsequently bringing claims after an inordinate amount of delay. *Hot Wax Inc. v. Turtle Wax, Inc.*, 191 F.2d 813, 820 (7th Cir. 1999). Waldron must demonstrate NAA's lack of diligence, as well as resulting prejudice. *Id.* at 822. NAA was not granted standing to bring an action under

7

the IACA until November 2000, when Congress amended the IACA with the Indian Arts and Crafts Enforcement Act of 2000. Thus, NAA had "no rights to sleep on" and the doctrine of laches is inapplicable. *Chrysalis*, 2002 WL 441476, at *4. Waldron's argument that NAA could have convinced various Indian tribes to bring suit for IACA violations is without merit. NAA did not have an obligation to seek out potential plaintiffs with standing to bring an action against Waldron. Within five months of the enactment of the Indian Arts and Crafts Enforcement Act, NAA brought an action against Waldron. Five months is not an inordinate amount of time. *Id.* Accordingly, summary judgment must be denied.

## CONCLUSION

The motion for summary judgment is denied.

April 19, 2002

ENTER:

Suzanne B. Conlon
United States District Judge