**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

FILED-ED4
20 MAY 24 PM 4: 06
CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| NATIVE AMERICAN ARTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01 C 2370 |
| | ) | |
| EARTHDWELLER, LTD. and | ) | Judge Conlon |
| WALDRON CORPORATION, | ) | |
| | ) | Jury Trial Demanded |
| Defendants | ) | |

**NOTICE OF FILING**

DOCKETED
MAY 2 8 2002

To: Mr. Howard Huntington
Knight, Hoppe, Kurnick and Knight
2860 River Road
Des Plaines, IL 60018

PLEASE TAKE NOTICE, that on May 24, 2002 Plaintiff filed its Response to Defendant's Motions in Limine, with the Clerk of the Court for the United States District Court For the Northern District of Illinois, a copy of which is attached hereto and served upon you.

One of the attorneys for the Plaintiff

**CERTIFICATE OF SERVICE**

I, Scott M. Kolosso, an attorney, certify that I served a copy of the attached pleading by causing a copy of said pleading to be placed in an envelope properly addressed to the parties named above and placed in the mail at 33 N. LaSalle Street, Chicago Illinois before 5:00 p.m. on May 24, 2002

Michael Patrick Mullen
John P. Nyhan
Scott M. Kolosso
Mullen & Foster
166 W. Washington St., Suite 600
Chicago, IL 60602
312-750-1600

99

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINIOS**
**EASTERN DIVISION**

FILED-ED4
90 :4 WJ ヤ2 KVW 20
U.S. DISTRICT COURT
CLERK

NATIVE AMERICAN ARTS, INC., )
)
        Plaintiff, )
)
        v. )
)
)
EARTHDWELLER, LTD., and )
THE WALDRON CORPORATION )
)
        Defendants. )
)

No. 01 C 2370

Judge Conlon

DOCKETED
MAY 2 8 2002

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTIONS IN LIMINE**

NOW COMES Plaintiff Native American Arts, Inc., (Hereafter "NAA" or "Native American Arts") by its attorneys Michael Patrick Mullen, Scott M. Kolosso, John P. Nyhan and MULLEN & FOSTER, and as its response to Defendant The Waldron Corporation's (Hereafter "Waldron") Motions in Limine, containing forty-nine (49) separate and distinct motions in limine, states as follows:

Many of Defendant's Motions in Limine are duplicative and overlapping. As such, while Plaintiff has responded to all Defendant's motions, rather than rewriting each response in its entirety, Plaintiff respectfully requests this Court incorporate any pertinent responses from one motion in limine to other relevant responses.

1.     Defendant's Motion in Limine barring any reference to the Indian Arts and Crafts Act (Hereafter "IACA") or the regulations promulgated thereunder should be denied. The pending cause of action is entirely based upon Waldron's alleged violation of the IACA and the regulations and, as such, are relevant. Any restriction on the use of the IACA or regulations would completely and unduly restrict Plaintiff's presentation of its case. Furthermore,

99

Defendant's basis for it's Motion, as set forth in Defendant's trial brief, paragraphs 9(a)-(k), is without merit. The referenced paragraphs allege the IACA and its regulations are unconstitutional. However, not only is a motion in limine an inappropriate vehicle to challenge the constitutionality of IACA and its regulations, but this Court, in this case, has already ruled that the IACA is constitutional. Additionally, five other judges in the Northern District of Illinois have also held the IACA and the regulations promulgated thereunder are Constitutional. NAA v. Village Originals, 25 F. Supp. 2d. 876 (N.D. Ill 1998)(J. Manning); Ho-Chunk Nation, et. al. v. Nature's Gifts, Inc., 1999 U.S. Dist. Lexis 3687 (N.D.Ill. 1999)(J. Holderman); NAA v. The Alchemists, Inc., Case No. 01 C 2371 (J. Gettleman 10-1-01); NAA v. Bundy-Howard, Inc., et. al., 168 F. Supp. 2d. 905 (N.D. Ill. 2001)(J. Shadur) and NAA v. Novelty, Inc., Case No. 01 C 5347 (J. Norgle 5-17-02). For further clarification, Plaintiff herein incorporates Section V, Paragraphs 5-13, of Plaintiff's trial brief.

To the extent that Defendant objects to use of copies of the statute and regulations as trial exhibits, they will only be used as handy exhibits to examine witnesses as needed and will not be provided to the jury during deliberations. Plaintiff will request the Court to take judicial notice of the statute and regulations and they are not offered into evidence as ordinary documents.

2. Defendant's Motion in Limine barring any reference to NAA being a legally established arts and crafts organization should be denied. Evidence will clearly establish that NAA is a legally established Indian arts and crafts organization. Additionally, in discovery, Plaintiff has provided Defendant with proof of NAA's status as a legally established Indian arts and crafts organization based upon their producing NAA's Articles of Incorporation, By-Laws, Annual Reports, and proof of tribal membership for the owners and principals of NAA as well as employees of NAA. Defendant's basis that "legally established" was not defined in the IACA or

its regulations is without merit. The Court will be asked to rule on this issue as a matter of law at the end of the evidence.

3.     Defendant's Motion in Limine barring any reference that NAA only employs Native American Indians should be denied. Since NAA's incorporation they have employed only Native American Indians and, pursuant to Judge Levin's orders, have provided Defendant tribal identifications on all employees. The only exception is that NAA had one high school student who was employed part-time as a cashier for two months and a part-time janitor who no longer works for NAA. NAA is owned and operated solely by Native Americans and Native Americans manufacture all products offered, displayed and sold by NAA. These facts also go to establishing that NAA is an Indian Arts and Crafts organization

4.     Defendant's Motion in Limine barring any reference that NAA's suppliers are members of federally recognized Indian tribes should be denied. During discovery, Defendant requested information regarding the identities of the suppliers of NAA's authentic Indian products. Judge Levin, following the example of five other judges in the Northern District of Illinois, sustained Plaintiff's objection ruling that Plaintiff did not have to provide such information because of the potential consequences to NAA's business were its suppliers to become involved in the pending litigation.

Matthew Mullen and Mary Mullen, the principals of NAA, have repeatedly testified in their depositions and attested to interrogatories stating that all their products offered, displayed and sold are made by Native American Indians. Any restriction on NAA disclosing that the products its offers and sells are made by Native Americans would completely and unduly restrict Plaintiff's presentation of its case. The fact that NAA sells only authentic Native American

made goods is the central core aspect of it's marketing operations and impacts directly on its competition with Waldron.

5.      Defendant's Motion in Limine barring any suggestion to the jury that the Defendant can be liable where there is either no intent or likelihood of confusion should be denied as the IACA does not require misrepresentation but, rather, simply requires a "false suggestion". Defendant entirely miscontrues the nature and elements of an IACA cause of action. First, as two judges in the Northern District of Illinois have already held, the IACA is a strict liability statute and no intent is necessary by Defendant. Ho-Chunk Nation, et. al. v. Village Originals, 25 F. Supp. 2d 876 (N.D. Ill. 1998) and Ho-Chunk Nation et al. v. Nature's Gifts, Inc., 1999 U.S. Dist. Lexis 3687 (N.D. Ill. 1999). Second, this is not a Lanham Act-type case where a plaintiff needs to show a likelihood of confusion. While Plaintiff's consumer survey expert will establish that confusion in the marketplace is occurring, this is not an element of an IACA cause of action and appears no where in the statute. Finally, Defendant is incorrect in its assertion that the IACA requires misrepresentation by its terms "falsely suggests." Falsely suggests is the standard in an IACA cause of action, not misrepresentation. The language of the IACA is very clear that an person may bring an action against a person who, directly or indirectly, offers, displays for sale and sells a good ….in a manner that *falsely suggests* it is Indian produced… (25 U.S.C. § 305e(a)) (Emphasis added).

Defendant is incorrect in its assertions regarding the IACA and, as such, Defendant's motion in limine based on its incorrect premise should be denied.

6.      Defendant's Motion in Limine barring any reference to the legislative history behind the IACA on the grounds of relevancy and Plaintiff's expert Mr. James T. Berger conclusory

opinions based upon the U.S. Senate's reliance on Congressional findings contained in the 2000 Amendment Hearing Report should be denied.

The legislative history behind the IACA is relevant because Mr. James T. Berger relied upon Congressional findings contained in the 2000 Amendment Senate Committee Report and Hearing in formulating his model and opinions. The information from the U.S. Senate that Mr. Berger relied upon was also found in numerous other sources. Defendant's attempt to bar Mr. Berger's *entire* testimony is groundless. Also, Defendant's objection to Mr. Berger's reliance on information that the **United States Senate** relied upon in enacting the IACA is absurd. The Senate reviewed the information and expressly found the information to be credible and accurate such that they enacted law based upon said information. Senator Ben Nighthorse Campbell of Colorado, Chairman of the U.S. Senate Committee on Indian Affairs, and Senator Jon Kyl (R. Ariz) both made statements on the record before the Senate Indian Affairs Committee quoting the exact information that Mr. Berger relied upon in his report. (See Mr. Berger's Expert Report attached hereto as Exhibit A)(Plaintiff excludes materials relied upon and attached to Mr. Berger's report, but these items are available at the Court's request). Further, Defendants arguments go to the weight to be given by the jury to these issues, not to their admissibility. Plaintiff should be able to argue the purpose of the statute, the remedy sought to be achieved and the effect of the statute.

In addition, Plaintiff will request the Court to take judicial notice of the legislative history ("legislative facts"). Judicial notice in this case is proper because the Court is deciding new issues of law, issues dealing with Constitutional rights, public policies, formulations of legal principles and evaluations of legislative enactments.

7.     Defendant's Motion in Limine set forth in paragraph 7 should be denied.  Any restriction hindering Plaintiff's ability to explain the serious problem of imitation Indian products in the U.S. marketplace and Congress' motivation for creating a IACA cause of action, such as NAA's, would completely and unduly restrict Plaintiff's presentation of its case.

Plaintiff should be able to demonstrate that the Senate Indian Affairs Committee, in recommending passage of the 2000 Enforcement Act, found that Indians have been seriously injured by the flood of non-authentic Indian products.  This hurts the whole industry, consumers, and producers, and is driving down prices, tainting consumer confidence and restricting Indian economic development, including that of NAA.

This is directed related to Plaintiff's injuries and, therefore, is relevant.  Furthermore, any testimony by Mr. Berger regarding the damage to the marketplace caused by imitation Indian products is based upon his extensive experience as a marketing expert.  Mr. Berger's testimony is based upon marketing and economic models and theories and the application of information obtained from credible sources, including the U.S. Congress, into those models.  Any specific information regarding Indian arts and crafts used by Mr. Berger was obtained directly from the findings and determinations of U.S. Senate Indian Affairs Committee or individuals who are experts or extremely knowledgeable regarding Indian arts and crafts.

Further, Defendants arguments go to the weight to be given by the jury to these issues, not to their admissibility. Plaintiff should be able to argue the purpose of the statute, the remedy sought to be achieved and the effect of the statute.

8.     Defendant's Motion in Limine set forth in paragraph 8 should be denied.  The IACA prohibits falsely suggesting Indian goods are Indian made and not just products made by a

particular tribe or Indian arts and crafts organization. The IACA in defining an Indian arts and crafts organization refers to enrolled members of different tribes, not just a single tribe.

NAA is not suing Waldron for violations of the IACA on behalf of other Indian tribes. NAA is a wholesaler and retailer who offers and sells authentic Indian-made products manufactured by Indians from many different Indian tribes. NAA is not just injured when Waldron offers or sells products falsely suggesting they were made by Ho-Chunk but, rather, NAA is injured when Waldron offers and sells any product that falsely suggests it was Indian-made within a given competitive area.

In addition, Defendant seeks to bar any testimony or reference by Matthew Mullen or Mary Mullen that one Indian tribe can and does manufacture arts and crafts items associated with another tribe. In support, Defendant argues that the IACA and the regulations did not provide so. This argument is confusing and without merit. The IACA provides that one cannot falsely suggest that a product is an Indian product, i.e. arts and craft that are Indian made. Under the IACA, a Native American of a particular tribe can maintain a cause of action based upon injury caused by the offer, display and sale of falsely suggestive Indian-made Indian products including products associated with other Indian tribes. Such a view is consistent with Indian culture where it is and has been common in the Indian community to borrow techniques and designs from other Indian tribes. This does not negate Waldron's alleged violation and is irrelevant under the IACA and the regulations.

9.     Defendant's Motion in Limine barring any reference to any exhibits pertaining to any Indian tribe that is not a recognized Indian tribe within the definition of 25 U.S.C. § 305e should be denied. While Plaintiff anticipates that all exhibits used at trial involve recognized Indian tribes within the definition of 25 U.S.C. § 305e, references or use of other tribal names by

Waldron is relevant because it further establishes Waldron's advertising pattern of using and labeling its products with tribal names, which falsely suggest that the product is Indian-made.

10.     Defendant's Motion in Limine barring any reference to products, invoices or documents of Waldron's which do not have a specific reference to the term "Indian," "Indian tribe," or "Native American" should be denied. This motion is absurd and without merit. Essentially, Defendant attempts to cast every piece of evidence not containing those terms as irrelevant. Clearly this is not the case and Defendant has not shown otherwise. More importantly, the IACA does not require a misrepresentation but, rather, a false suggestion. This will be established by the total facts involving Waldron's offer, display and sale of allegedly violative products including the marketing and advertising methods and description of products falsely suggestive of being Indian-made without the direct use of "Indian," "Native American," or a named Indian tribe.

11.     Defendant's Motion in Limine barring any exhibits, documents or evidence that references Indian tribes by Waldron absent a foundation that NAA sells products from the same tribe should be denied. Defendant incorrectly attempts to portray this case as a palming-off type case where there is a comparison of NAA's and Waldron's products. Here, that is not the case. Under the IACA, all Plaintiff needs to prove is that Waldron offered, displayed and sold products falsely suggestive to be Indian-made and that NAA has suffered an injury as a result. This is a question for the jury to determine. Plaintiff does not need to establish that they were selling comparable products, even though they were, in order to be injured. NAA operates a retail establishment that offers authentic Indian-made items and has been injured by Waldron's sale of imitation products within its competitive area. Furthermore, because of sharing and borrowing

of artistic techniques and designs between tribes many of the Indian designs used by Waldron cannot be attributed to a single tribe.

12.     Defendant's Motion in Limine barring any evidence, documents, or exhibits which reflect sales of Waldron products where the Plaintiff is not in direct competition with Waldron should be denied. Other than Defendants catalogs, brochures, etc., Plaintiff does not anticipate offering evidence showing specific sales of Waldron products outside areas of direct competition, with the exception of showing all Waldron's sales in the Northern District of Illinois. While Plaintiff does not allege that it was directly damaged by these sales, this information is relevant as it establishes the extent to which Waldron was selling imitation Indian products in NAA's competition areas or areas where, because of the sales of Waldron's products, NAA and other sellers of authentic Indian-made products were being excluded from the marketplace, either at a retail or wholesale level. It also shows the extent of the injury to the Indian goods marketplace by Waldron, which is relevant.

13.     Defendant's Motion in Limine set forth in paragraph 13 should be denied. Plaintiff has made direct purchases of Waldron products being displayed for sale and sold at various retailers and videotape showing the display for sale of Waldron products. Plaintiff will introduce evidence of the wholesale sale of Waldron products to various retailers in NAA's competitive area. It is a question for the jury to make the inference, based on the total circumstances, that the retailers were offering for sale and selling those products, which is the purpose and function of the retailers. That is evident particularly when Waldron would make subsequent wholesale sales of the same products to that same retailer.

Additionally, Plaintiff does offer and sell products at the wholesale level and has alleged an injury caused by Waldron's wholesale sales of imitation Indian products into its competitive

area. NAA did attempt to make wholesale sales including to retailers at issue here and was precluded from doing so because of Waldron's sale of falsely suggestive goods.

14.     Defendant's Motion in Limine barring any wholesale sale of Waldron's without proof of competition by NAA in the same wholesale market, or with the same retailer should be denied. Whether Waldron and NAA are competing in the same market is a question for the jury. Plaintiff will present evidence establishing Waldron's wholesale sales to retailers and the subsequent retail sales of those goods as well as NAA's competitive sales which will allow the jury to conclude that competition existed.

15.     Defendant's Motion in Limine barring any suggestion of Waldron's sales to Buckboard as there is no proof in discovery that Buckboard sold Waldron products should be denied. First, Waldron should not be allowed to benefit and have material excluded because they have destroyed documents that would show sales to Buckboard. Second, Waldron is incorrect in its assertion that there is no proof that Buckboard sold Waldron products. Matthew Mullen has testified that on several occasions he purchased Waldron products from Buckboard. These purchases were alleged in the complaint and amended complaint and receipts from said purchases were provided to Defendant as part of Plaintiff's initial 26(a) disclosures. In addition, Plaintiff has provided videotape to Defendant clearly showing the display for sale of Waldron products at Buckboard on multiple occasions.

16.     Defendant's Motion in Limine set forth in paragraph 16 should be denied. These are legal arguments and Defendant is improperly seeking an advisory opinion from the Court.

Plaintiff will present proof of diverted sales which caused an actual injury to NAA. In discovery, Waldron has been provided with the relevant NAA sales information. Plaintiff will show actual damages and injury to establish Article III standing and injury-in-fact. NAA never

waived that position. NAA will show the fact of actual damages, but will not show the amount thereof, having elected to use statutory damages to quantify its damages. Likewise, Waldron's gross profits go to establish actual damages and injury-in-fact, not the quantification of damages. Under the IACA, an element to establish that a plaintiff has been injured and damaged is whether the violator had a gross profit on the violative products. Congress included defendant's gross profits as a substitute for determining injury and damages based upon lost sales and to eliminate plaintiffs having to show lost sales which is usually difficult to do. This applies whether a plaintiff elects to seek statutory damages or treble damages. Regardless, Plaintiff did not waive its right to show actual damages because it elected to seek statutory damages.

Plaintiff's profits and losses were not produced in discovery because such information is irrelevant. Plaintiff's profits and losses are irrelevant because NAA is a start-up business such that a diversion in sales cannot be established by comparing their profits before and after Waldron's violative conduct. As stated, Plaintiff did produce NAA's sales for each year from 1997 through 2001. It is these sales figures that Plaintiff's marketing expert, Mr. James T. Berger, used in his accepted model further establishing damages and injury to NAA caused by Waldron. This issue was a discovery dispute which was resolved and should not be raised at this stage of the case.

17.     Defendant's Motion in Limine set forth in paragraph 17 should be denied. The IACA provides for statutory damages of $1,000 per day per product. Recently, in <u>Native American Arts, Inc. v. Bundy-Howard, Inc., et. al</u>, 168 F. Supp. 2d 905, Judge Shadur rejected an argument against the statutory damage provisions application of $1,000 per day per product, holding:

> "It is sufficiently plain from the use of the words "good" and "product" that the $1,000 per day damages floor applies to each different type of product rather than to each item of inventory...[] speculation that perhaps $1,000 per day may be assessed only once no matter how many types of products violate the Act cannot withstand scrutiny... Section

305e(a) uses the words "good" and "product" in singular form. It could be scarcely more evident that [] can expect damages to be assessed for each separate "good" or "product," rather than suffering single assessment for all goods or products collectively. This common sense view comports with the manner in which other statutes have been read.(citations omitted) Id. at 913.

Later, in this same case, Judge Shadur rendered a sua sponte memorandum order further clarifying his previous ruling, holding:

"When the statute at issues says $1,000 in damages is payable for each day that the sale of an offending product 'continues,' the obvious thrust of the verb 'continues' is that if such a product is on sale for (say) five days, the damages amount to $5,000."

Clearly, under the IACA, a plaintiff is entitled to $1,000 for each day that each different violative product is offered, displayed, or sold. The IACA does not provide for, nor is Plaintiff seeking, damages on inventory of the same product. As such, Plaintiff is not double counting damages.

18.     Defendant's Motion in Limine set forth in paragraph 18 should be denied. Defendant sold retailers the products with advertising and marketing material and tags attached. Also, in some cases, Waldron sold and sent retailers displays racks and display materials intending and instructing retailers to display Waldron products in a certain fashion with the advertising and marketing materials and tags attached.

In addition, testimony regarding displays, sales, representations, or the actions of any retailer including, but not limited to, Bear Tracks, Earthdweller, and Buckboard are relevant because Defendant has argued that Plaintiff knew or had reason to know of its injuries back in December 1996. Based upon the highly suggestive nature of Waldron's products and tags AND the displays, sales, representations, or the actions of Bear Tracks, Earthdweller, and Buckboard, Plaintiff did not know or have reason to know that Waldron's products were not Indian-made and of its injuries until an agent of Waldron told him the products were not Indian-made on or

about March 6, 2002. The activities of the retailers is relevant as it goes directly to Plaintiff's knowledge regarding the authenticity of the products at issue and shows the sales of Waldron's products in NAA's competitive trade area

Also, the statements made by retailers regarding Waldron products are admissible because they will be used to show Matthew Mullen's and Daniel Mullen's state of mind and are not offered for the truth of the matter asserted.

19.     Defendant's Motion in Limine set forth in paragraph 19 should be denied. On or about January 19 and January 24, 2001, NAA made two direct purchases of products from Waldron. Matthew Mullen's credit card was charged in the total amount of said purchases. Waldron promptly shipped the first shipment, but due to the products being sent to an incorrect address the products were returned to Waldron. Nevertheless, title had passed to NAA upon shipment and the goods were owned by NAA.

At this time, Waldron obtained knowledge that it would likely be the subject of a lawsuit brought by NAA. During this same time, Matthew Mullen had contacted Waldron several times in attempts to obtain the products he ordered and paid for in January 2001. However, despite its failure to inform Matthew Mullen, Waldron had unilaterally breached the sales contract, refused to deliver agreed upon and paid for merchandise, and without authorization credited Matthew Mullen's credit card for the purchases.

Finally, on or about March 6, 2001, an agent of Waldron informed Matthew Mullen that Waldron would not honor the contract because they believed Matthew Mullen has misrepresenting that the products were Indian-made. This untrue statement was given as a reason not to give NAA its products despite the actual reason was their knowledge of a potential lawsuit by NAA. (Lisa Dorsey dep. at 62, attached hereto as Exhibit B). The Waldron

Corporation's President, Trisha Waldron, stated that they kept the products and refused to ship them to NAA so as to prevent NAA from having the products for use as evidence and, thus, Waldron was suppressing evidence. (Trisha Waldron dep. at 55, 56, attached hereto as Exhibit C).

Defendant refused to ship NAA's goods, lied about it, and unilaterally, without authorization, credited Plaintiff for products which Plaintiff had purchased and was entitled to receive. As such, Waldron suppressed evidence in this cause of action. Defendant's refusal is further relevant to explain to the Court and jury why, although injured by Waldron's offer, display for sale and sale of that product, Plaintiff does not have some of the actual products in its possession to present at trial.

20. Defendant's Motion in Limine set forth in paragraph 20 should be denied. Plaintiff is confused as to the purpose of this particular motion and requests that the Court deny Defendant's request absent further clarification to the Court and Plaintiff. Plaintiff has not alleged damages based upon any copyright infringement. Further, even if all designs and stories are from the public domain and copyright free materials, that does not negate a violation of the IACA where there is a false suggestion that the products are Indian-made. Further, Plaintiff should be able to refer to inaccuracies in Defendant's advertising tags regarding Indian lore, if it desires, to show Defendant's actions to falsely create an image of Indian lore.

21. Plaintiff does not dispute Defendant's Motion in Limine set forth in paragraph 21. Plaintiff has waived any claims to punitive damages and will refrain from references to Trisha Waldron's personal finances, sales of the Waldron Corporation and/or sale of the building housing The Waldron Corporation, unless such material should become relevant at trial.

22.     Defendant's Motion in Limine set forth in paragraph 22 should be denied.  Plaintiff does not intend to make reference to rulings of other District Court Judges as such.  Rather, it would only make reference to the law as the Court decides.  While the rulings of other judges in the Northern District of Illinois are not binding on this Court, the decisions rendered by these judges provide guidance to the Court.  This is especially true considering that the IACA is a relatively new statute and that Defendant has raised numerous legal issues including, but not limited to, the constitutionality of the IACA and regulations which this Court and other District Court Judges in the Northern District of Illinois have already ruled upon.

23.     Defendant's Motion in Limine set forth in paragraph 23 should be denied.  Defendant mischaracterizes the Magistrate Judge Levin's orders as Judge Levin did not rule that the identity of Waldron's customers were confidential and not discoverable.  Rather, as part of a compromised ruling, Plaintiff agreed to accept the locations and street addresses of Waldron's customers and allow Defendant to redact the name of the retailer.  Plaintiff will refer by name only to Buckboard, Earthdweller, and Bear Tracks and any other retailer by address only.

24.     Defendant's Motion in Limine set forth in paragraph 24 should be denied.  Plaintiff decision to seek statutory damages in no manner waives its right to information regarding the finances of the Waldron Corporation.  Plaintiff will introduce only Defendant's admission that it has gross profits on its Circle of Nations products at issue.

25.     Defendant's Motion in Limine set forth in paragraph 25 should be denied.  Consumer surveys conducted by Defendant are relevant since they show Defendant's reliance upon such surveys.

26.     Defendant's Motion in Limine set forth in paragraph 26 should be denied.  Defendant has alleged that it did not make sales to certain relevant retailers, including Buckboard (See ¶15).

However, Plaintiff will show such sales, and other sales, even in the absence of Defendants sales records. Thus, Defendant's destruction of records is relevant to establish that sales could have been made to these locations even if Waldron's records allegedly no longer exists. Additionally, Defendant has provided some documentation, including invoices, dating back as early as 1996 and 1997. This is inconsistent with Waldron's asserted document destruction policy under which Waldron contends it does not have sales and other records prior to January 1, 2000. Plaintiff will show some sales invoices to customers prior to January 1, 2000, which, again, should not exist according to Waldron's asserted destruction policy. Plaintiff will also show relevant Waldron invoices to retail customers that were furnished by said retail customer but not furnished by Waldron.

27.     Defendant's Motion in Limine set forth in paragraph 27 should be denied. When, how and who informed Waldron of the pending litigation before service of process and, most importantly, the fact of such knowledge, is relevant because it establishes why an agent of Waldron on about March 6, 2001 or possibly in February 2001, admitted to Matthew Mullen that the relevant products were not Indian-made. Plaintiff argues that this admission was made only because Waldron had become aware of lawsuits being filed by Plaintiff and would face giving testimony under oath. In addition, it establishes why Defendant refused to return to NAA Waldron products purchased and paid for by NAA prior to suit, which products had been delivered to NAA, but returned to Defendant because of a mistaken address.

28.     This part of Defendant's Motion was specifically raised in Defendant's Trial Memorandum in support of Waldron's Motion in Limine to Preclude Evidence of Survey and Testimony of Dr. Thomas Watkins. Please see Plaintiff's Response to that Trial Memorandum for a comprehensive response to this and other portions of this Defendant's Motion as indicated.

29.     This part of Defendant's Motion was specifically raised in Defendant's Trial Memorandum in support of Waldron's Motion in Limine to Preclude Testimony of Mr. James T. Berger. Please see Plaintiff's Response to that Trial Memorandum for a comprehensive response to this and other portion of this Defendant's Motion as indicated.

30.     Defendant's Motion in Limine set forth in paragraph 30 should be denied. Mr. James T. Berger's considered, among other things, information based upon Mr. Berger's recent recollection of the interviews with the four individuals and not recordings of their conversations. Mr. Berger *never* listened to the recorded statements or made transcripts thereof. The recordings were simply taped over in the ordinary course of Mr. Berger's business. The circumstances involving the recordings of the conversations merely goes towards the weight of the evidence and does not form a basis to exclude Mr. Berger's opinions or the information he considered in formulating his opinions.

31.     Defendant's Motion in Limine set forth in paragraph 31 should be denied. Congress accepted and relied upon the information that the Indian arts and crafts industry was a billion dollar market and that nearly one-half of that was imitation Indian products. As stated in ¶ 6, Senator Ben Nighthorse Campbell of Colorado, Chairman of the U.S. Senate Committee on Indian Affairs, and Senator Jon Kyl (R. Ariz) both made statements before the Senate Indian Affairs Committee quoting this exact information. In addition, the Senate Indian Affairs Committee Report which was the basis for the Senate and the House's passage of the legislation also concluded that the Indian arts and crafts industry is a billion dollar market with about one-half of that figure being taken up by Indian products falsely suggested to be Indian-made. Regardless, this merely goes towards the weight of the evidence, not to admissibility.

32.     Defendant's Motion in Limine set forth in paragraph 32 should be denied. NAA's sales and that 50% of its sales were from jewelry was disclosed in interrogatories, during discovery, and prior to taking key depositions of the parties. Regardless, this merely goes towards the weight of the evidence. Again, Defendant should not be allowed to now raise disputed discovery matters.

33.     Defendant's Motion in Limine set forth in paragraph 33 should be denied. Plaintiff's use of exhibits for the purpose for calculating the number of days and statutory damages is a neutral, unbiased document which only assists the jury in putting its findings together in an organized manner. The jury will be adequately instructed on causation, as an element of the action, and will be determining the number of violative products and the number of days said products caused injury to NAA in light of those instructions. It does not calculate the number of days based only on the number of days Plaintiff was open but, rather, the number of days Waldron products were being offered, displayed or sold while NAA was operating in the same competitive areas. Also, the manner in which the number of days is calculated and the number of days is a question of fact for the jury and not a legal issue subject to disposition in a motion in limine.

34.     Defendant's Motion in Limine set forth in paragraph 34 should be denied. The information relied upon by Mr. Berger was derived from information relied upon by Congress in enacting the Indian Arts and Crafts Enforcement Act of 2000 as well as from experts or persons very knowledgeable in the field of Indian arts and crafts. This methodology is standard for marketing studies such as that performed by Mr. Berger. In regards to the argument that Plaintiffs lost sales are *de minimis*, the lost sales attributable to Waldron establish injury and causation in fact, are not *de minimis,* and constitute a substantial number of violative products.

35.     Defendant's Motion in Limine set forth in paragraph 35 should be denied.  Defendant

Waldron waited almost eleven months from the time it knew it had allegedly been selling

violative products until it began putting inadequate disclaimers on the tags of some of the

allegedly violative products.  Waldron's actions have not been remedial.  Because Waldron has

not used disclaimers consistently or effectively F.R.E. 407's exclusion of evidence of subsequent

remedial measures does not apply.

Rule 407 is a policy-based rule.  The public policy driving this rule is that courts do not

want to discourage a defendant from taking actions to correct a situation or condition that could

cause additional injuries in the future or effect safety.  If a defendant takes a remedial action that

does not actually correct the problem or remove a condition that could cause additional injuries

then the policy upon which the rule is based has not been achieved.  In such a case, Rule 407

does not apply, <u>Polansky v. Ryobi American Corp</u>. 760 F. Supp. 85, 86 (D. Md. 1991).

Here, Plaintiff has alleged that two of Defendant's product lines, Circle of Nations and

Earthcharms, are in violation of the IACA.  Approximately eleven months after obtaining

knowledge of the lawsuit, Defendant put inadequate disclaimers on an unknown number of

products in only one of their product lines.  In this one product line, Defendant merely used

removable stickers on some products.  Further, Defendant has done nothing to alleviate the large

volume of products currently being offered, displayed or sold at retailers throughout the U.S.

which do not have any disclaimers on the products.

In addition, Rule 407 does not exclude Defendant's inadequate use of some disclaimers

because the Rule does not require the exclusion of evidence of subsequent remedial measures

when offered for another purpose, such as the feasibility of precautionary measures.  Plaintiff

will argue the use of disclaimers would have been a very feasible option for Defendant to utilize

in order to attempt to caution or prevent misleading consumers, to avoid further injury to NAA or to avoid potential injury to others in the marketplace and consumers. Defendant disputes that adequate disclaimers can be an effective precautionary measure by not adopting or using them during the time at issue or certainly upon filing of the suit. Other manufacturers have used such disclaimers with minimal expense and inconvenience.

Instead, Waldron did nothing for eleven months following the allegations that its products falsely suggested they were Indian-made in violation of the IACA. After eleven months they put removable disclaimer stickers on some products in one product line. In addition, Waldron did nothing to alleviate any potential confusion regarding its catalogs or website which the evidence will show, also falsely suggests that Waldron products are Indian-made. All were feasible precautionary measures.

Michelle Price's letter (Pl. Trial Exhibit No. 102) advising only some of Waldron's new prospective customers that Waldron products were not Indian made was not a post remedial measure. First, this letter only went to some of Waldron's prospective customers which were specifically handled by Michelle Price and not to all Waldron prospective customers. Second, the persons injured by Waldron's violative products are the consumers who purchased Waldron products believing they are Indian-made and competitors of Waldron, such as NAA, who suffer various injuries, including competitive injuries, because of Waldron's sales. Michelle Price's letter was only sent to some of her prospective customers of Waldron products and did nothing to remedy the alleged injury. It was unknown to Waldron's management that such a letter was being used until recently, more than six months after Michelle Price began using this letter. The letter was not adopted by Waldron for use generally or by other sales representatives. Even if Michelle Price's letter is considered a post remedial measure, it is admissible to show

recognition of possible confusion by retailers of Waldron's products. Also, again, Michelle Price's letter is not an effective remedial measure so Rule 407 would not apply.

36.     Defendant's Motion in Limine set forth in paragraph 36 should be denied. Any inquiry by Sherry Baskin of some of her suppliers whether they are Native American is not a post remedial measure because it does nothing to alleviate the injury or harm being caused.

37.     Defendant's Motion in Limine set forth in paragraph 37 should be denied. Under Rule 407, it is improper for Waldron to attempt to bar alleged post remedial measures of a third-party, i.e. Bear Tracks. Also, the notice at Bear Tracks is not excluded under Rule 407 because the notice is ineffective to remedy the injury or harm being caused. The notice is not specific to Waldron products but, rather, provides that not all items in the Bear Tracks store are authentic Native American Indian items, which does not preclude Waldron's products from being authentic.

38.     Defendant's Motion in Limine set forth in paragraph 38 should be denied. Any testimony regarding the conversations with Bear Tracks sales clerks or any other retail sales clerks are exceptions to the hearsay rule because they are offered for the state of mind of Matthew Mullen regarding whether he knew or had reason to know that the Waldron products were not Indian-made and are not offered for the truth of the matter asserted herein.

39.     Defendant's Motion in Limine set forth in paragraph 39 should be denied. Defendant's factual basis for paragraph 39 is completely wrong. When requested, Plaintiff has readily made available its products for inspection including bringing a sample of NAA's products to the deposition of Trisha Waldron, which Defendant made copies thereof. While Plaintiff has made it clear that this is not a palming off-type case where a comparison must be made between Waldron's and NAA's products, Plaintiff has stated that it will put a sample of its products into

evidence at trial in order to show the types of Indian products it sells. Upon determining which products would be so used, Plaintiff has repeatedly offered, both orally and in writing, that those products were available for inspection by Defendant and even offered to have Defendant photograph or videotape said products. In addition, Defendant has been to NAA's retail establishment and has seen firsthand NAA's products.

40.     Plaintiff has no objection to the Court granting Defendant's Motion in Limine set forth in paragraph 40.

41.     Defendant's Motion in Limine set forth in paragraph 41 should be denied. Plaintiff and Defendant entered into two binding contractual agreements for the sale and purchase of specific Waldron products. Plaintiff paid in full for those products and one order was delivered, but returned to Waldron because of a mistaken address. Defendant then refused to redeliver the paid for merchandise which NAA then owned, and without authorization, credited Plaintiff's credit card account. Lisa Dorsey testified that Defendant did not provide NAA the products it ordered because they knew of the pending litigation. Trisha Waldron testified the products were not shipped so as not to give NAA evidence.

Defendant's conduct establishes the length and extraordinary measures taken by Waldron to keep the products purchased by Plaintiff and prevent their use as evidence. This includes the fact that Waldron credited the purchase to a new credit card issued to Plaintiff which was not used in the transaction because, for reasons unrelated to this litigation, Plaintiff's credit card used to make the purchases was canceled. Waldron somehow managed to find the new credit card information and get a credit put to that account. See response to paragraph 18 contained herein.

More importantly, Plaintiff has specifically identified fifty-seven (57) Waldron products which caused injuries to Plaintiff. Plaintiff determined these products through extensive analysis

of Waldron advertising materials, Waldron's invoices, and the invoices of retailers selling Waldron products in the Northern District of Illinois. Of these fifty-seven products which Plaintiff will seek damages upon, sixteen products were part of the two orders which Defendant refused to provide. Defendant's refusal to provide these products at the time of purchase was suppression of evidence and has substantially impeded Plaintiff's presentation of its case. Plaintiff has the right to explain to the Court and the jury the reason why they cannot present some of the actual products or pictures of the actual products at trial and, instead, must rely upon Waldron's catalogs.

42.     Defendant's Motion in Limine set forth in paragraph 42 should be denied. Defendant's discontinuation of its website in January 2002 is relevant because it is an admission of culpability. Waldron's website contained violative language falsely suggesting that the products sold by Waldron were Indian-made products which, Plaintiff will argue, is the reason for its discontinuation in January 2002.

43.     Defendant's Motion in Limine set forth in paragraph 43 should be denied. Testimony of Matthew Mullen and Mary Mullen will establish when specific advertising material, product lists or price lists were circulated. Also, Plaintiff does not understand Defendant's attempt to bar NAA's product list dated January 20, 1998 "on the basis that is was timely disclosed during discovery." Regardless, in preparation for trial, Plaintiff discovered an additional product list which it promptly provided to Defendant as a supplement to previous discovery requests. This product list is one of many provided to Defendant and has and will cause no unfair surprise or prejudice.

44.     Defendant's Motion in Limine set forth in paragraph 44 should be denied. Plaintiff has alleged that Waldron excluded Plaintiff from certain wholesale markets by selling non-authentic

products to prospective retail clients and this exclusion caused injury to Plaintiff. The letter Defendant refers to sought wholesale business and was sent to these prospective retail clients, including Earthdweller and Buckboard, with NAA's advertising materials and, as such, is relevant.

45.     Plaintiff has no objection to the Court granting Defendant's Motion in Limine set forth in paragraph 45.

46.     Defendant's Motion in Limine set forth in paragraph 46 should be denied. Matthew Mullen and Mary Mullen may testify to the fact, which is not an opinion, that based upon their own observation and experience, that they are the only store in their competitive area in the Chicagoland area exclusively selling authentic Indian-made products.

47.     Plaintiff has no objection to the Court granting Defendant's Motion in Limine set forth in paragraph 47.

48.     Defendant's Motion in Limine set forth in paragraph 48 should be denied. Defendant's argument that the IACA is not retroactive is without merit. Plaintiff herein incorporates Section V, paragraph 14 of Plaintiff's trial brief, regarding Plaintiff's standing to recover damages prior to November 9, 2000.

49.     Defendant's Motion in Limine set forth in paragraph 49 regarding unspecified documents should be denied. In discovery, Plaintiff has produced to Defendant any and all documents which were specifically requested by Defendant or were the subject of interrogatories and not abandoned or not pursued. Plaintiff is under no obligation to produce documents which were not the subject of Defendant's discovery requests or were abandoned or not pursued. Further, this case involved numerous disputes between the parties as to relevant discovery. All such disputes by Waldron were either resolved by the Court, by Magistrate Judge Levin, or were abandoned by

Waldron.  Defendant should not now attempt to resurrect these disputes under the guise of a a

Motion in Limine.

WHEREFORE, the Plaintiff, Native American Arts, Inc., respectfully requests that this

Court deny Defendant's Motions in Limine.

Respectfully Submitted,

One of the attorneys for Plaintiff

Michael Patrick Mullen
Scott M. Kolosso
John P. Nyhan
MULLEN & FOSTER
166 W. Washington Str., Suite 600
Chicago, Illinois 60602/ 312-750-1600

# See Case File for Exhibits