# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2370 | **DATE** | 1/21/2003 |
| **CASE TITLE** | Native American vs. Earth Dweller | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant's objections to Plaintiffs' Proposed Jury Instruction No. 8 are overruled in part and sustained in part. Defendant's objection to the reference to "directly or indirectly" is overruled. Defendant's objection to the retroactive application of the statute allowing Plaintiff to seek damages for Defendant's conduct that occurred before the statute was amended is sustained. The parties are directed to simultaneously file supplemental submissions addressing the question of whether Plaintiff should be allowed to amend its complaint to include an Indiana tribe as a plaintiff in light of the Court's ruling. A courtesy copy of each party's submission should be provided to Chambers no later than noon on January 29, 2003. Each party should serve the other party by fax or hand delivery.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JAN 2 2 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | 137 |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | CLERK | | |
| TH ✓ | courtroom deputy's initials | 03 JAN 21 PM 12: 53 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

| | |
|---|---|
| NATIVE AMERICAN ARTS, INC., | ) |
| Plaintiff, | ) |
| v. | ) No. 01 C 2370 |
| THE WALDRON CORPORATION, | ) Judge Amy J. St. Eve |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Native American Arts, Inc. ("NAA") has sued The Waldron Corporation ("Waldron") for violation of the Indian Arts and Crafts Act of 1990 (the "1990 Act") and The Indian Arts and Crafts Enforcement Act of 2000, 25 U.S.C. §305e. Judge Conlon previously ordered a bifurcated trial on the issues of liability and damages. The parties have submitted proposed jury instructions. The Court addresses the objections to Plaintiff's Jury Instruction No. 8 below.[1]

## ANALYSIS

Plaintiff's Jury Instruction No. 8 states, in relevant part:

> This is an action for alleged violations of the Indian Arts and Crafts Act which provides that an Indian Arts and Crafts Organization may bring an action against a person who, directly or indirectly, offers or displays for sale or sells a good in a manner that falsely suggests it is Indian produced, an Indian product, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization resident within the United States.

---

[1] The Court is addressing this proposed instruction first in light of Plaintiff's representation at the pre-trial conference that it wanted to be heard in advance of trial on the issue of amending the complaint to include an Indian tribe as a Plaintiff if the Court sustained Defendants' objections. The Court will address the other jury instruction issues in a subsequent ruling.

1

137

Defendant objects to this instruction on two grounds. First, it argues that the reference to the terminology "directly or indirectly" is not appropriate, because that language was not contained in the statute or regulations until after November 9, 2000, and at least some of the conduct and sales took place before the amendment on that date. Second, Defendant claims that the statute should not be applied retroactively to allow Plaintiff to seek damages for Defendant's conduct that occurred before the statute was amended to afford Plaintiff standing to bring a lawsuit.

I. Addition of "Directly or Indirectly"

Defendant's first objection to Plaintiff's Jury Instruction No. 8 is overruled. From the face of the statute, the addition of the words "directly or indirectly" did not change the substance of the statute. As the legislative history makes clear, the addition of this language merely clarified the statute:

> [T]o enhance the ability of the plaintiff to assess and calculate damages, the phrase "directly or indirectly" will be added after the phrase "against a person who." This provision clarifies that suit may be brought against a manufacturer and/or supplier when the plaintiff is not in direct competition with the manufacturer or supplier.

Senate Report (Indian Affairs Committee) No. 106-452, Oct. 2, 2000.

Further, the addition of these words has no bearing on this lawsuit. Defendant has stipulated that it "is engaged in the design and sale of jewelry," which includes a line of products called "Circle of Nations" that is created in a Native American style. (Statement of Uncontested Facts ¶8.) Thus, the issue is not whether Defendant "offers or displays for sale or sells a good," but instead whether it "falsely suggested its products were made by Native Americans." (*Id.* ¶12.)

2

## II. Retroactive Application of Amendment

Defendant's second objection is sustained. As an initial matter, retroactive application of a statute or an amendment "is not favored in the law." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). In fact, there is a "presumption against retroactive legislation [that] is deeply rooted in our jurisprudence." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S.Ct. 1483, 1497, 128 L.Ed.2d 229 (1994). "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Id.*

When assessing the potential for retroactive application of a statute, the Court looks to the face of the amended statue to determine if Congress "has expressly prescribed the statute's reach." *Stone v. Hamilton*, 308 F.3d 751, 754 (7th Cir. 2002). "When congressional intent is clear as to the issue of prospective versus retroactive application, then this intent controls." *Mozee v. American Commercial Marine Serv. Co.*, 963 F.2d 929, 932 (7th Cir. 1992) (citing *Kaiser Alum. & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 838, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990)). The amended statute, however, does not provide any such guidance. Congress has not stated its intent on whether this amendment should be applied retroactively.

Without a clear indication of Congress' intent, the Court must determine whether applying the amendment to conduct that occurred before the amendment would provide for an impermissible retroactive effect. The Supreme Court addressed a similar issue in *Hughes Aircraft Co. v. United States*, 520 U.S. 939, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997). In *Hughes*, the Supreme Court was confronted with changes to the False Claims Act. Before the

3

amendment, only the United States had standing to bring a suit against someone submitting a false claim to the Government if the Government had information in its possession that proved the falsity of the claim. *Id.* at 941, 117 S.Ct. at 1874. Private parties at the time could bring suit on behalf of the United States only where the Government did not have that information in its possession. *Id.* The amendment removed this restriction and allowed private parties to bring lawsuits even where the Government had the information. *Id.* The Supreme Court found that the statute could not be applied retroactively:

> The extension of an FCA cause of action to private parties in circumstances where the action was previously foreclosed is not insignificant. As a class of plaintiffs, *qui tam* relators are different in kind than the Government. They are motivated primarily by prospects of monetary reward rather than the public good . . . . In permitting actions by an expanded universe of plaintiffs with different incentives, the 1986 amendment essentially creates a new cause of action, not just an increased likelihood that an existing cause of action will be pursued . . . . This is true even if a cause of action remained open to some other party.

*Id.* at 949-50, 117 S.Ct. at 1877-1878.

Recently, the Seventh Circuit relied upon *Hughes* in assessing the retroactive application of an amendment to the Food Stamp Act and concluding that an amendment cannot be applied retroactively if it increases the likelihood that a person will be sued for its actions. *Stone v. Hamilton*, 308 F.3d 751, 756-57 (7th Cir. 2002). Under the Food Stamp Act amendment, Congress required states to collect from food stamp recipients where the state agency had over-issued food stamps in error, and enabled the states to collect for the error by involuntarily reducing a recipient's food stamp allotment. Prior to the amendment, the states could collect when their agencies had over-issued food stamps, but they could not do so by involuntarily

4

reducing a recipient's allotment. The Seventh Circuit held that "despite the fact that the plaintiffs remained liable for the overissuances both before and after the enactment of the amendments, viewing the effect of the amendment in a commonsense and functional manner, since the enactment of the amendment, the food stamp recipients face increased legal consequences." *Id.* at 756. The Seventh Circuit further found that "a new statute can increase the legal consequences to the affected party without necessarily increasing the dollar amount of liability." *Id.*

Here, allowing Native American Arts to seek remedies for conduct that allegedly occurred before Native American Arts had standing to sue would have the same retroactive effect that *Hughes* and *Stone* found impermissible. Before the 2000 amendment, the only private party that had standing to file a lawsuit under the Indiana Arts and Crafts Act was a Native American tribe. *See Native American Arts, Inc. v. Moon Raven International, Inc.*, 1998 WL 325245 (N.D.Ill. Jun. 10, 1998)(holding that Native American Arts, an Indian arts and crafts organization, does not have standing to sue under the 1990 Act). By expanding the class of plaintiffs that had standing under the Act to Native American arts and crafts organizations (who may also be competitors of the parties they sue), Congress increased the likelihood that a person will be sued for the conduct described in the Act. Accordingly, Defendant's second objection to Plaintiff's Jury Instruction No. 8 is sustained.

DATED: January 21, 2003         ENTERED:

AMY J. ST. EVE
United States District Judge

5