# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2370 | **DATE** | 7/22/2004 |
| **CASE TITLE** | Native American Arts, Inc. vs. The Waldron Corp | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum opinion, the plaintiffs' motions for a new trial and to amend and vacate the judgment entered in favor of defendant on 11/25/03, in accordance with the jury's verdict is denied. The Court finds no just reason to delay the appeal in this matter. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | JUL 2 3 2004 | |
| ✓ | Docketing to mail notices. The parties picked up copies of the memorandum opinion. | | | date docketed | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | docketing deputy initials | 231 |
| | Copy to judge/magistrate judge. | 2004 JUL 22 PM 8: 13 | | | |
| MW | courtroom deputy's initials | FILED-E01 | | date mailed notice | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

NATIVE AMERICAN ARTS, INC., et al.,    )
                                           )
            Plaintiff,          )
                                           )
        v.                 )    No.  01 C 2370
                                           )
THE WALDRON CORPORATION,      )
                                           )
            Defendant.     )

DOCKETED
JUL 2 3 2004

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiffs' motion for a new trial and to amend and vacate the judgment entered in favor of Defendant on November 25, 2003, in accordance with the jury's verdict. For the reasons stated below, we deny Plaintiffs' motions.

## BACKGROUND

At the conclusion of a jury trial, a jury found in favor of Defendant in this case. Plaintiffs now seek to vacate the judgment entered against them and seek a new trial. Plaintiffs argue that this court erred in refusing to utilize Plaintiffs' jury instruction regarding 25 C.F.R. 309.24 on the basis that the regulation is

unconstitutional. Plaintiffs also argue that the court erred in refusing to instruct the jury in regards to 25 C.F.R. 309.24 because Plaintiffs contend that the ruling is contrary to rulings of prior judges in the case. Plaintiffs also claim that the court failed to instruct the jury properly on the issue of intent and that the court erred in admitting Defendant's point of purchase card. In addition, Plaintiffs contend that the court erred in admitting the opinion testimony of Sherry Baskin and Linda Olson and that the court erred in improperly instructing the jury regarding the calculation of damages. Finally, Plaintiffs argue that the court erred in denying Plaintiffs' motion for a mis-trial based on alleged personal attacks in opening arguments, closing arguments, and that the court erred in refusing to admit the statements of Bear Tracks employees. Plaintiffs also make various other cursory objections, but fail to provide any basis for their position.

## LEGAL STANDARD

Federal Rule of Civil Procedure 59 provides as follows:

(a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; and (2) in an action tried without a jury, for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States. On a motion for a new trial in an action tried without a jury, the court may open the judgment if one has been entered, take additional testimony, amend findings

of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment.

(b) Time for Motion. Any motion for a new trial shall be filed no later than 10 days after entry of the judgment.

(c) Time for Serving Affidavits. When a motion for new trial is based on affidavits, they shall be filed with the motion. The opposing party has 10 days after service to file opposing affidavits, but that period may be extended for up to 20 days, either by the court for good cause or by the parties' written stipulation. The court may permit reply affidavits.

(d) On Court's Initiative; Notice; Specifying Grounds. No later than 10 days after entry of judgment the court, on its own, may order a new trial for any reason that would justify granting one on a party's motion. After giving the parties notice and an opportunity to be heard, the court may grant a timely motion for a new trial for a reason not stated in the motion. When granting a new trial on its own initiative or for a reason not stated in a motion, the court shall specify the grounds in its order.

(e) Motion to Alter or Amend Judgment. Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment.

Fed. R. Civ. P. 59.

## DISCUSSION

<u>I. Whether Regulation was Inconsistent and Unconstitutional</u>

Plaintiffs argue that this court erred in refusing to instruct the jury regarding regulation 25 C.F.R. 309.24 because it is inconsistent with the statute and is unconstitutional. The regulation reads as follows:

§ 309.24 How will statements about Indian origin of art or craft products be interpreted?

(a) In general. The *unqualified use* of the term "Indian" or of the term "Native American" or the *unqualified use* of the name of an Indian tribe, in connection with an art or craft product, is interpreted to mean for purposes of this part that-

(1) The maker is a member of an Indian tribe, is certified by an Indian tribe as a non-member Indian artisan, or is a member of the particular Indian tribe named; and

(2) The art or craft product is an Indian product.

(b) Products of Indians of foreign tribes--

(1) In general. The *unqualified use* of the term "Indian" or of the term "Native American" or the *unqualified use* of the name of a foreign tribe, in connection with an art or craft product, regardless of where it is produced and regardless of any country-of-origin marking on the product, is interpreted to mean for purposes of this part that--

(i) The maker is a member of an Indian tribe, is certified by an Indian tribe as a non-member Indian artisan, or is a member of the particular Indian tribe named;

(ii) The tribe is resident in the United States; and

(iii) The art or craft product is an Indian product.

(2) Exception where country of origin is disclosed. Paragraph (b) of this section does not apply to any art or craft for which the name of the foreign country of tribal ancestry is clearly disclosed in conjunction with marketing of the product.

Example. X is a lineal descendant of a member of Indian Tribe A. However, X is not a member of Indian Tribe A, nor is X certified by Indian Tribe A as a non-member Indian artisan. X may not be described in connection with the marketing of an art or craft product made by X as an Indian, a Native American, a member of an Indian tribe, a member of Tribe A, or as a non-member Indian artisan of an Indian tribe. However, the true statement may be used that X is of Indian descent, Native American descent, or Tribe A descent.

25 C.F.R. § 309.24(emphasis added). At trial we instructed the jury, in accordance

with the Indian Arts and Crafts Act of 1990 ("IACA"). We refused Plaintiffs'

request to include a jury instruction regarding 25 C.F.R. § 309.24 and its reference to

4

the "unqualified use" of the terms "Indian," "Native American," or the name of a tribe. We indicated at trial that the regulation was inconsistent with the plain language of the statute and that the regulation is unconstitutional. The regulation is unconstitutional because it is vague and overbroad and is also unconstitutional to the extent that it seeks to regulate commercial speech.

### A. Inconsistency With Statute

The regulation is inconsistent with the IACA and would be misleading for a jury. The IACA provides:

§ 305e. Cause of action for misrepresentation of Indian produced goods

(a) Injunctive or equitable relief; damages

A person specified in subsection (c) of this section may, in a civil action in a court of competent jurisdiction, bring an action against a person who, directly or indirectly, offers or displays for sale or sells a good, with or without a Government trademark, *in a manner that falsely suggests it is Indian produced*, an Indian product, or the product of a particular Indian or Indian tribe or Indian arts and crafts organization, resident within the United States, to--

(1) obtain injunctive or other equitable relief; and

(2) recover the greater of--

(A) treble damages; or

(B) in the case of each aggrieved individual Indian, Indian tribe, or Indian arts and crafts organization, not less than $1,000 for each day on which the offer or display for sale or sale continues.

25 U.S.C. § 305e. The IACA requirement that the display be falsely suggesting indicates that the statute is intended to prevent misrepresentations and misleading displays that would deceive consumer and lead them to incorrectly conclude that the products were Indian-made. However, the regulation's statement that the unqualified use of the terms "Indian," "Native American," or the name of a tribe is inconsistent with the IACA. There are many possible ways to use the words "Indian" or "Native American" or the name of a tribe in connection with the sale of artwork or jewelry that would not falsely mislead the consumer into believing that the merchandise was necessarily Indian-made. We shall provide a hypothetical example to illustrate this point. Suppose a store sold broaches that depicted a flower standing in tall grass on the prairie. Suppose there were hundreds of the broaches, which were all identical, and the broaches on display were set in boxes with a label that read "Cherokee Indian Flower." A reasonable consumer would not automatically be lead to conclude, based upon the use of the phrase "Cherokee Indian," that the broaches were made by a Native American utilizing skills passed down from the generations in accordance with his or her time honored traditions. This is not to say that the product would be presumed not to be Indian-made. A Native American could have produced the broaches in his workshop or on machines in his factory in which Native Americans work. However, the key is that a

consumer would not be lead to presume that the product was Indian-made by looking

at the merchandise or the display. The regulation, on the other hand, instructs jurors

to conclude that consumers of the broaches, whether they purchased the broaches at

a shop that sold Indian Jewelry, or purchased the broaches at a grocery store, saw the

terms "Indian" and "Cherokee" on the boxes and thought the broaches were Indian-

made.


### B. Unconstitutional

We also indicated at trial that the regulation was unconstitutional. The

regulation is vague, overbroad, and is also too far reaching in its regulation of

commercial speech. Restrictions on speech based on "the content of the message . . .

conveyed, is subjected to 'the most exacting scrutiny.'" *Texas v. Johnson*, 491 U.S.

397, 412 (1989)(quoting *Boos v. Barry, supra*, 485 U.S. 312, 321 (1988)).

Defendant contends and Plaintiffs concede in their pleadings that Defendant's

jewelry was her artwork. Defendant's jewelry was thus artwork and was the end

product of her expression of the various cultures that she learned about. Such speech

is protected even if the jewelry is eventually sold. *See Virginia State Bd. of*

*Pharmacy v. Virginia Citizens Consumer Council, Inc*, 425 U.S. 748, 761

(1976)(stating that "[s]peech likewise is protected even though it is carried in a form

that is 'sold' for profit."); *Ayres v. City of Chicago*, 125 F.3d 1010, 1014 (7ᵗʰ Cir. 1997)(holding that T-shirts sold by plaintiffs were "a medium of expression prima facie protected by the free-speech clause of the First Amendment, and they d[id] not lose their protection by being sold rather than given away.").

To determine whether a regulation is unconstitutionally vague under the due process doctrine of vagueness, a court must consider: "(1) whether it provides sufficient notice of what may not be done, and (2) whether it contains reasonably clear guidelines so as to prevent official arbitrariness or discrimination in its enforcement. *International Soc. for Krishna Consciousness v. Rochford*, 585 F.2d 263, 267 (7ᵗʰ Cir. 1978). In 25 C.F.R. § 309.24, the reference to "unqualified use" is too vague to meet constitutional muster. A non-Indian seeking to use the mentioned terms would be lead to infer that he or she must somehow qualify the use of the words. It is unclear what is entailed in qualifying the words. Webster's Ninth New Collegiate Dictionary defines the word "qualify" in part as: "to reduce from a general to a particular or restricted form[,] . . . to make less harsh or strict[,] . . . to limit or modify the meaning of[,] . . . [or] to characterize by naming an attribute." Thus, a non-Indian seller of jewelry or artwork with the term "Indian" or "Native American" would need to try and discern what must be done to qualify the term. A non-Indian seller might conclude a number of different actions were required to

qualify the term. Taking again the above example with the broaches, the seller might change the labels on the boxes to read "Johnson's Cherokee Indian Flower" thinking that a clearly non-Indian term in the phrase would qualify the use of the restricted terms. The seller might think that he could qualify the terms as long as he included, along with the general references to "Indian" "Cherokee," more specific references to the Indian culture and the Cherokee tribe. The seller might also conclude that he should provide a disclaimer stating that the product is not Indian-made. Even if the seller did so, it would be unclear what would be an acceptable way to qualify the terms. One could argue that the disclaimer should immediately follow the terms and should thus state: "Cherokee Indian Flower (this broach was not made by Native Americans)." Other sellers might conclude that a slip of paper with the disclaimer in the box accompanying the broach would be sufficient. There are any number of potential misconceptions that non-Indian sellers might have when determining what they would need to do to comply with the statute. Non-Indian sellers are thus not provided with sufficient notice of what is prohibited and because of the vague nature of the term "unqualified," the statute can be arbitrarily applied against non-Indian sellers in civil actions because each individual has a different perception of what is necessary to qualify the terms. Thus, no matter what the non-Indian seller does, there will always be an argument that the non-Indian seller did

not do what is required under the regulation.

The regulation is also overbroad. The purpose of the "overbreadth doctrine" is to prevent "the government from casting a net so wide that its regulation impermissibly burdens speech." *Schultz v. City of Cumberland,* 228 F.3d 831, 848 (7th Cir. 2000). A plaintiff can show that a regulation is facially overbroad by establishing that there is "a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court." *Id.*(quoting *City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789, 801 (1984)). A regulation can be found overbroad only if "a limiting construction is not readily available and the unconstitutional applications of the regulation are real and substantial in relation to the regulation's plainly legitimate sweep." *Id.*

As stated above, the IACA is clearly intended to prohibit non-Indian sellers of arts and crafts from falsely misleading consumers into concluding that the sellers' merchandise is Indian-made. The broach example listed above is only one example of how the term "unqualified" in the regulation prohibits uses of the terms "Indian" and "Native American" and Indian tribal names that are entirely lawful and clearly not the concern of the IACA. The IACA does not seek to prohibit all usage of the terms by non-Indians. It acknowledges that non-Indians can use the terms when

10

selling art and jewelry. The use of the term "unqualified" expands the scope of the restriction to encompass other protected speech that the government has no legitimate interest in regulating.

We note that Plaintiffs themselves, through this litigation, have conceded that Defendant's jewelry was the result of her personal designs and expression and was artwork. To the extent that the packaging and displays of Defendant's products may be commercial speech the regulation is also impermissible. *See Board of Trustees of State Univ. of New York v. Fox*, 492 U.S. 469, 476-486 (1989)(stating that "[a] government's restrictions on commercial speech may be no more broad or no more expansive than 'necessary' to serve its substantial interests."); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc*, 425 U.S. 748, 764-766 (1976)(stating that "society . . . may have a strong interest in the free flow of commercial information . . . [and that] [e]ven an individual advertisement, though entirely "commercial," may be of general public interest)(stating in addition that "[i]t is a matter of public interest that [consumer's] decisions, in the aggregate, be intelligent and well informed . . .[and] [t]o this end, the free flow of commercial information is indispensable."). Commercial speech is "speech which proposes a commercial transaction." *Hornell Brewing Co., Inc. v. Brady*, 819 F.Supp. 1227, 1233 (E.D.N.Y. 1993). The First Amendment and the Fourteenth Amendment

11

"protect[] commercial speech from unwarranted governmental regulation." *Central*

*Hudson Gas & Elec. Corp. v. Public Service Commission of New York,* 447 U.S.

557, 561 (1980). In *Central Hudson Gas & Elec. Corp. v. Public Service*

*Commission of New York,* 447 U.S. 557, 561 (1980) the United States Supreme

Court created an analysis for restrictions on commercial speech. A government can

regulate commercial speech that is protected by the First Amendment, which

concerns lawful activity and is not misleading if: "1) the government establishes a

"substantial interest," 2) the regulation "directly advance[s] the governmental

interest asserted," and 3) the regulation is not "more extensive than necessary to

serve the interest asserted." *Id. See also Hornell Brewing Co., Inc. v. Brady,* 819

F.Supp. 1227, 1233 (E.D.N.Y. 1993)(holding that the ban of the use of the term

"Crazy Horse" on the defendant's liquor bottles did not "directly advance" the

government's asserted interest of protecting Native American's from falling prey to

alcoholism).

   In *Board of Trustees of State University of New York v. Fox,* 492 U.S. 469,

476-486 (1989) the United States Supreme altered the *Central Hudson* analysis to

include the "reasonableness test." The Court in *Board of Trustees of State*

*University of New York* stated that "the free flow of commercial information is

valuable enough to justify imposing on would-be regulators the costs of

12

distinguishing . . . the harmless from the harmful. . . ." *Id.* Although the government is not required to show that the restriction is the least restrictive means to advance the public interest, the government is required to show that the restriction is "reasonable," meaning that the regulation "represents not necessarily the single best disposition but one whose scope is 'in proportion to the interest served, . . . that employs not necessarily the least restrictive means but, as [the court has] put it in the other contexts, a means narrowly tailored to achieve the desired objective." *Id.*

In the case before us the restriction included in 25 C.F.R. § 309.24 is not reasonable because it is not in proportion to the interest of preventing consumers from being misled into believing that certain arts and jewelry are Indian-made. There are any number of alternative means that the government could use to further such an objective that would not inhibit completely lawful activity under the IACA, and the use of the broad term "unqualified" unnecessarily delves into lawful activity under the IACA and is clearly unconstitutional.


## II. Prior Judges' Rulings Regarding Regulation

Plaintiffs argue that the court erred in failing to instruct the jury regarding 25 C.F.R. § 309.24 because prior judges in the case indicated that an instruction should be given to the jury. A subsequent judge sitting in a case cannot alter the prior

13

judge's ruling "merely because he has a different view of the law or facts from the first judge." *Williams v, C.I.R.*, 1 F.3d 502, 503 (7th Cir. 1993)(stating that "litigants have a right to expect that a change in judges will not mean going back to square one."). However, a subsequent judge in a case may rule differently "if new information convinces him" that the prior ruling was incorrect. *Id.* This court found that the regulation was unconstitutional and therefore, we acted appropriately in excluding the jury instruction, regardless of the prior judges' rulings.

Plaintiffs argue that Judge Conlon, a prior judge in this case, already ruled in their favor in her ruling on Defendant's motion to dismiss. However, Judge Conlon did not specifically address the regulation or address the issue of whether the regulation was unconstitutional. Judge, Conlon specifically indicated that she would not consider Defendant's arguments relating to the "unqualified" language in the regulation because they were not introduced until Defendant's reply brief. Plaintiffs also contend that Judge St. Eve told them that Plaintiffs' regulation jury instruction would be given to the jury. However, Plaintiffs fail to offer documentation for such a claim and it is their burden to do so as the movants. The record reflects no such promise by Judge St. Eve. Also, Judge St. Eve was not presented with the issue of the constitutionality of the regulation and whether it was vague or overbroad or consistent with the statute. Unlike Judge St. Eve, we had occasion to address these

issues as we prepared for trial. Our research indicated that the regulation is unconstitutional and therefore, based upon our analysis, we concluded that the proper ruling would be to deny the jury instruction request. In addition, a judge who tries a case has a certain discretion in how he or she manages the trial and in his or her rulings. As the judge presiding over the case, we were presented issues that were never fully brought to the attention of prior judges in the case, and we ruled accordingly.

We also properly refused to defer to the regulation because it was unconstitutional and contradicted the plain language of the statute. If Congress provides as it does in the IACA that an administrative agency can issue regulations to further explain the language of a statute "[s]uch legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc,* 467 U.S. 837, 843-44 (1984). The implementation of regulations must be consistent with the statute. In this case, the regulation is directly contrary to the statute and is unconstitutional and thus we properly declined to defer to the regulation.

III. Intent Instruction

Plaintiffs argue that the court failed to properly instruct the jury on the issue

of intent. Plaintiffs argue that because the IACA does not specify intent by including words such as "intended" that no intent is required for a violation of the statute. However, Plaintiffs' argument ignores the plain language of the statute which prohibits a defendant from selling and displaying a product "in a manner that falsely suggests it is Indian produced. . . . " 25 U.S.C. § 305e. The Act is clearly addressing deceptive conduct. Plaintiffs themselves made significant efforts at trial to show that Trisha Waldron intentionally marketed her products in a manner in order to trick customers into thinking that her products were Indian-made. The jury was properly instructed in regards to the false suggestion requirement. We did not take an additional step and instruct the jury as to the intent requirement of the IACA. Instead, we notified the jury of the language of the IACA and remained silent, as the IACA is silent as to intent. Since the IACA is silent as to intent, it would be improper for the court on its own to have instructed the jury on matters not referred to in the statute. Therefore, it was proper not to confuse the jury by delving into the issue of intent, which is not specifically mentioned in the instruction. Regardless, had the court delved into the issue of intent the proper instruction would not have been as Plaintiffs propose indicating that intent is not required to show a violation of the IACA.

## IV. Admission of Point of Purchase Card

Plaintiffs argue that the court erred in admitting into evidence Defendant's point of purchase card. The card was used by Defendant in sales displays. There was testimony that the cards were given to retailers to be presented along with the display of the Circle of Nations line and circumstantial evidence indicating that the cards were present at displays brought into issue by the Plaintiffs at trial. The cards were relevant in determining whether or not Defendant's sales displays were false and misleading. Simply because Plaintiffs chose not to take a card when they secretly video taped stores and chose not to video tape the cards when they purchased jewelry does not make the cards any less probative on the issue of whether or not the displays were false and misleading.

## V. Testimony of Sherry Baskin and Linda Olson

Plaintiffs contend that the court erred in admitting the testimony of Sherry Baskin ("Baskin") and Linda Olson ("Olson"). Baskin was employed by a store named Bear Tracks that sold Defendant's products. Her testimony was probative on a variety of issues. One example is that since she was the direct purchaser from Defendants and thus was in essence an initial consumer of Defendant's products, it is

relevant as to whether she thought the jewelry was Indian-made and whether she thought the displays or products' packaging to be falsely misleading. Plaintiffs complain that Baskin presented her opinions, but Plaintiffs themselves presented ample testimony at trial from a lay person witness regarding that person's opinion at the time of purchase as to whether or not Defendant's products were Indian-made. Testimony by Olson at trial, to which Plaintiffs objected, was similarly allowed at trial and we find no error in admitting her testimony.

Plaintiffs argue that the "[g]ist of the [c]ase is a [f]alse [s]uggestion to the [u]ltimate [c]onsuming [p]ublic and [n]ot to [r]etailers or [o]ther [p]ersons." (Mot 10). Thus, according to Plaintiffs, Baskin and Olson were acting on behalf of retail stores purchasing the products from the manufacturer which is not the concern of the IACA. Plaintiffs thus argue that it is the purchases by the ultimate consumers that the IACA is concerned with rather than retailers. However, the ultimate objective stated in legislative history for the IACA, is to prevent Native American artists from being forced out of business by non-Indian artists and jewelry makers who can falsely suggest that their products are Indian-made. In regards to this concern, it is entirely relevant how retailers perceived goods that they purchase from jewelry makers and artists. Perhaps a retailer wants to purchase only Indian-made goods and, because of the display of the goods, the retailer mistakenly believes goods to be

Indian-made. Retailers' testimony is also relevant because a good retailer is also well versed in selling to the customer and versed in understanding its customers' perceptions. In addition, as Olson and Baskin were familiar with the particular jewelry and displays in question, in this case, their opinions were relevant in determining whether there was a false suggestion that the products were Indian-made. Also, the fact that the Plaintiffs have resorted to arguing as to what is the "gist" of the IACA and that they fail to cite any law in support of their position shows that Plaintiffs are reaching far beyond the law in making such arguments.

## VI. Calculation of Damages

Plaintiffs challenge the court's jury instructions regarding the calculation of damages. We instructed the jury that damages would be calculated at $1,000 per day for each display of the product. On November 6, 2003, we issued a ruling which provided an elaborate explanation for the instruction that was to be given to the jury. Calculating damages at $1,000 for each piece of jewelry as Plaintiffs proposed, leads to unreasonably large damage awards and such a result clearly was not intended by Congress.

## VII. Testimony of Bear Tracks Employees

Plaintiffs argue that the court erred in refusing to admit the alleged statements of retail clerks at the Bear Tracks store allegedly made to Matthew and Daniel Mullen. Matthew and Daniel claimed that when they purchased Defendant's products, the store clerks told them that the products were Indian-made. However, the statements were clearly hearsay and no hearsay exception applies.

## VIII. Alleged Personal Attacks on Plaintiffs

Plaintiffs contend that we erred in some fashion because Plaintiffs contend that Defendant's counsel engaged in personal attacks against Plaintiffs in Defendant's opening statement and in the closing arguments. Defendant's counsel's actions were not sufficiently severe to warrant any actions by the court other than were taken at trial. Therefore, the court did not err in denying Plaintiffs' motion for a mis-trial based upon the alleged personal attacks.

## IX. Remaining Arguments

Plaintiffs also include in their briefs various other conclusory arguments. In regards to these arguments, Plaintiffs misunderstand the purpose of a motion to

vacate. The motion is not merely an opportunity to ask the court to second guess all of its decisions at trial by simply listing all decisions made at trial in a cursory manner and then appending the language "the court erred in regards to such ruling." Plaintiffs have failed to provide arguments to support many of Plaintiffs' allegations of error. Thus, even after we have allowed Plaintiffs an opportunity to submit supplemental briefing, their briefs are insufficient in regards to many issues and we need not address them. We note that we have reviewed all of our rulings in the case and find that they were all entirely appropriate and proper.

## CONCLUSION

Therefore, we deny Plaintiffs' motion for a new trial and to amend and vacate the judgment.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: July 22, 2004